# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOBBY GIFFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 12-1369-JWL |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Background

Plaintiff applied for SSD and SSI alleging disability beginning June 1, 2007. (R. 13, 147-60). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in evaluating the medical opinions of both his treating psychiatrist and the non-treating psychologist, Dr. Mintz, and in evaluating the credibility of his allegations of disabling symptoms. He also claims that the residual functional capacity (RFC) assessed is not supported by substantial record evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed for Plaintiff. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the record evidence does not support the ALJ's weighing of the medical opinions. Because remand is necessary in any case, the court will not now address Plaintiff's claims regarding credibility and RFC assessment, and Plaintiff may make those arguments to the Commissioner on remand.

## II. Evaluation of the Medical Opinions

### A. The Parties' Arguments

Plaintiff claims the ALJ erred in failing to accord great weight to the opinion of his long-time treating psychiatrist, Dr. El-Halawany, and in adopting the limitations opined by the non-treating psychologist, Dr. Mintz. He argues that despite the ALJ's contrary findings, the limitations assigned by Dr. Mintz are not compatible with the record, and the record supports Dr. El-Halawany's opinion. He argues that Dr. El-Halawany's opinion should have been accorded controlling weight, but if not, it should have been accorded greater weight at least. Much of Plaintiff's claim that the ALJ's RFC assessment is not supported by the evidence also rests on the argument that the ALJ erred in weighing the

4

medical opinions. In that section of his brief, Plaintiff argues that the ALJ expressed a rationale for rejecting Dr. El-Halawany's second opinion dated in October 2010, but failed to evaluate Dr. El-Halawany's first opinion completed in May 2010:

> The ALJ failed to even address this Medical Source Statement. While the ALJ noted Dr. El-Halaway's[2] second Medical Source Statement and summarily dismissed it as "reflect[ing] the symptomology that was presented during that period of decompensating…," Dr. El-Halaway's earlier opinion, offered in May 2010 is not mentioned in the ALJ's decision except in passing. The ALJ offers no discussion of the weight offered Dr. El-Halaway's earlier opinion and essentially ignores this opinion except to state "The claimant's treating psychiatrist, Nabil A. El-Halaway, M.D., authored mental source statements providing marked limitations that are not supported by the overall medical records and are not given great weight." Beyond this statement, which as above discussed is insufficient to determine the true weight offered Dr. El-Halaway's opinions, the ALJ does not further discuss the earlier opinion offered by Dr. El-Halaway.

(Pl. Br. 21) (quoting R. 19) (citations omitted).

The Commissioner argues that the ALJ properly evaluated the medical opinions. She argues that the ALJ "documented his consideration of Dr. El-Halawany's opinion, and determined that the opinion was not due controlling weight," and that substantial evidence supports that determination. (Comm'r Br. 4) (citing R. 19). She argues that the ALJ highlighted the portions of the record which are inconsistent with the psychiatrist's opinion. Id. at 5. She argues that at the time of Dr. El-Hallawany's first opinion in May 2010, he was not actually a treating source and that "the May 2010 opinion does not

---

[2]Plaintiff erroneously refers to this psychiatrist as "Dr. El-Halaway," whereas the treatment records reveal it is "Dr. El-Halawany," as the ALJ recognized in the decision at issue. E.g., (R. 309, 355, 365, 386, 457, 506, 522, 540, 547) (Exhibits 2F, 3F, 4F, 8F, 15F, 18F, 21F, 25F, 26F).

5

warrant remand for further consideration because it could never be due the weight given the opinion of a treating doctor." Id. at 6. Finally, she concludes that because the ALJ properly discounted Dr. El-Halawany's opinions, it was appropriate to accord greater weight to Dr. Mintz's opinion, and the ALJ's assignment of particular relative weight to the opinions is a permissible view of the evidence. Id. at 7-8 (citing Cowan v. Astrue, 552 F.3d 1182, 1185 (10th Cir. 2008) for the proposition that "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

### B. The ALJ's Findings

The ALJ explained his evaluation both of the opinions of Dr. El-Halawany and of the opinion of Dr. Mintz:

> The claimant's treating psychiatrist, Nabil A. El-Halawany, M.D., authored mental [medical] source statements (MSSs) providing marked limitations that are not supported by the overall medical records and are not given great weight. (Exhibits 13F, 15F) As outlined above, the claimant's mental health status examinations revealed he was cognitively intact with no psychosis, suicidal or homicidal thought, and he mostly presented as mildly anxious and mildly depressed. While records reflect he did experience at least one episode of decompensation, the MSS authored on October 12, 2010, Exhibit 15F, would reflect the symptomatology that was presented during that period of decompensation, but nothing in the record reflects that these symptoms persisted.
> 
> Medical records dated February 8, 2011 note he had fair hygiene and grooming, and he exhibited no evidence of psychosis, hallucinations or delusions. He seemed to be able to carry on a better dialogue and was driving. (Exhibit 25F/2) Thereafter, the treatment notes reflect the claimant's father reported he has days when he is in a daze and other days he mopes around, auditory hallucinations, restlessness and poor sleep, but when questioned the claimant denied any present symptoms. (Exhibit 27F)

6

(R. 19).

> Dr. Mintz opined that the claimant had no limitation in the ability to understand, remember, and carry out simple instructions; mild limitation in the ability to understand and remember detailed instructions and make judgments on simple work related decisions; and moderate limitation in the ability to carry out complex instructions, make judgments on complex work related decisions, interact appropriately with the public, supervisors and co-workers, and respond appropriately to usual work situations and changes in a routine work setting. (Exhibit 24F) The limitations assigned by Dr. Mintz are compatible with the record, given great weight, and adopted by the undersigned.

(R. 20).

### C.     Analysis

The Commissioner correctly stated the standard for evaluating the weight given to treating source medical opinions:

> the ALJ must give "specific reasons for the weight given to [the] treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to treating source's medical opinion and the reasons for that weight." SSR 96-2p. The ALJ must "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks and brackets omitted). When an ALJ completely rejects a treating-physician opinion, the ALJ must give "specific, legitimate" reasons for doing so. Id. (internal quotation marks and brackets omitted). An ALJ is not required to explicitly discuss all of the regulatory factors in deciding what weight to give to a medical opinion. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

(Comm'r Br. 4-5).

Here, the ALJ discounted Dr. El-Halawany's opinions because they "are not supported by the overall medical records." (R. 19). The Commissioner acknowledges

7

that "the ALJ must specifically highlight those portions of the record with which the [treating] physician's opinion was allegedly inconsistent," (Comm'r Br. 5) (citing Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004)) and argues that the ALJ did so in this case by summarizing medical records which contained mental health examinations which were inconsistent with Dr. El-Halawany's opinions. Id. This argument has a superficial appeal here, but does not reflect the specific highlighting referred to by the court in Hamlin. While the records summarized by the ALJ reflect intact functioning, mild problems, no current suicidal or homicidal intent, no evidence of psychotic symptoms, and a good prognosis in certain instances; the ALJ also noted that at times the records revealed body odor and poor hygiene, circumstantial thought, being fired from work, emergency room visits, being in a daze, auditory hallucinations, and a global assessment of functioning (GAF) score of 42--representing serious symptoms. (R. 18-19). In such circumstances, it is needful for the ALJ to explain why the record as a whole precludes the marked limitations found by Dr. El-Halawany.

To be sure, the ALJ explained that the October 2010 opinion reflected symptomatology presented during a period of decompensation in August through October 2010, but that "nothing in the record reflects that these symptoms persisted." (R. 19). Even if one accepts that the record does not reflect that these symptoms persisted, that leaves a problem with the ALJ's consideration of Dr. El-Halawany's May 2010 opinion. If the two opinions represent limitations presented at different periods of time, the May 2010 opinion cannot reflect the decompensation symptoms which first presented in

August 2010, and it became necessary for the ALJ to explain why the limitations presented in the May 2010 opinion (which were lesser than those presented in the October 2010 opinion) were precluded by the overall medical records after excluding August through October 2010. But, as Plaintiff points out, the ALJ did not specifically address the May 2010 opinion at all.

Moreover, the record is not absolutely clear that the symptoms presented in August through October 2010 did not persist. As the ALJ acknowledged, there is record evidence from May 2011 that Plaintiff was in a daze some days, that he moped around other days, that he had auditory hallucinations, and that he had restlessness and poor sleep, but the ALJ discounted this evidence by merely commenting that "when questioned the claimant denied any present symptoms." (R. 19). The record will not support this gloss. The May 18, 2011 treatment notes reveal that the healthcare provider "noted psychosis (auditory hallucinations), restlessness, poor sleep." (R. 548) (all capitalization omitted). Thereafter, the record states "father reports that after motorcycle accident [client] was doing well and now appears in a daze most days, then other days mopes around, then other days he cannot recall if taking meds or using more than suggested. Father bought him a med box. [Client] denied any of this now." Id. (all capitalization omitted). The record supports a finding that Plaintiff denied being in a daze, moping around, and forgetting whether he has taken his medications. However, there can be no doubt that he did not deny auditory hallucinations, restlessness, and poor sleep. In any case, the mere fact that Plaintiff denied some of the alleged symptoms, is not conclusive evidence that

9

they are not true. The ALJ himself found that Plaintiff's allegations are not credible. (R. 18). The court does not intend to imply that the ALJ may not make findings such as he made in the decision at issue. Rather, it finds that the ALJ must consider all of the evidence, and explain specifically how the evidence supports his findings.

The court makes one final note of an ambiguity in the decision which detracts from the ALJ's findings. The ALJ recognized that at his initial mental health intake appointment with Kanza Mental Health, Plaintiff was assessed a GAF score of 42 which is within the scale range of 41 through 50 which represents serious psychological symptoms. or serious impairment in social, occupational, or school functioning. (R. 19). He found that the treatment notes and follow-up appointments do not support the assignment of such a serious score. (R. 19). On the other hand, the ALJ found that the limitations assigned by Dr. Mintz are compatible with the record and adopted them as his own. Id. at 20. However, Dr. Mintz assigned Plaintiff a GAF score of 50 (R. 533) which is within the same "serious" range as the score assigned in Plaintiff's treatment records, and which the ALJ found was not supported by the record evidence. Yet, the ALJ made no mention of the GAF score assigned by Dr. Mintz. Because Dr. El-Halawany's treatment records and Dr. Mintz's report place Plaintiff within the same "serious" GAF range, and since the ALJ found that the record does not support such a GAF score, he must explain the effect Dr. Mintz's assignment of such a score had on the evaluation of Dr. Mintz's opinion.

Remand is necessary for the ALJ to make his evaluation of the medical opinions "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Oldham, 509 F.3d at 1258.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 18th day of February 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**